UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE CHAN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>C&S WHOLESALE GROCERS, INC. a Vermont Corporation; TRACY LOGISTICS, LLC, an unknown business entity; and DOES 1 through 100, inclusive,<br><br>　　　　　Defendants. | No.  2:13-cv-02140-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

　　　　Through this action, Plaintiff Jose Chan ("Plaintiff") seeks relief from Defendants C&S Wholesale Grocers, Inc. ("C&S") and Tracy Logistics, LLC ("Tracy Logistics") (collectively "Defendants") for violations of the California Labor Code and California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq.  Plaintiff originally filed his Complaint in the Superior Court of California, County of Los Angeles.  On August 29, 2013, Defendants removed Plaintiff's case to the United States District Court for the Central District of California pursuant to the Court's diversity jurisdiction.  On October 16, 2013, the case was transferred from the Central District of California to the Eastern District of California.  ECF No. 20.  Presently before the Court is Plaintiff's Motion to

///

Remand ("Motion").  Mot., Oct. 1, 2013, ECF No. 16.  For the reasons set forth below, Plaintiff's Motion is DENIED.[1]

## BACKGROUND

Defendant Tracy Logistics has employed Plaintiff as a Warehouse Supervisor at its Stockton Facility since the end of 2003 or the beginning of 2004.  Generally speaking, Plaintiff alleges that he was hired by Defendants, misclassified as an "exempt" employee, and paid on a salary basis without any compensation for overtime hours worked, missed meal periods, or rest breaks.

Plaintiff further claims that he worked over eight hours per day, and/or more than forty hours per week, during the course of his employment with Defendants.  According to Plaintiff, although Defendants knew or should have known that he was entitled to receive certain wages as overtime compensation, he did not receive such wages.  Plaintiff also asserts he did not receive all his rest and meal breaks; nor did he receive one additional hour of pay when he missed a meal period.  Additionally, while Defendants knew or should have known that Plaintiff was entitled to receive at least minimum wages as compensation, he did not receive that wage for all hours worked.

Plaintiff goes on to allege that he was entitled to timely payment of all wages during his employment and to timely payment of wages earned upon termination of his employment, neither of which he received.  Likewise, Defendants did not provide Plaintiff with complete and accurate wage statements, although Defendants knew or should have known that Plaintiff was entitled to that reporting.

Plaintiff also asserts that Defendants failed to keep complete and accurate payroll records.  Finally, Defendants purportedly falsely represented to Plaintiff that the wage

///

---

[1] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs pursuant to E.D. Cal. Local Rule 230(g).

denials were proper. Instead, according to Plaintiff, these wage denials were improper and served the purpose of increasing Defendants' profits.

These claims were brought by a different plaintiff in a class action in state court, Tompkins v. C&S Wholesale Grocers, Inc., on February 3, 2011.[2] On March 14, 2011, the defendants in the Tompkins action removed the case to federal court, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). The Tompkins plaintiff then moved to remand the case, on the grounds that the operative complaint alleged an amount in controversy below the $75,000 threshold. The Court granted the plaintiff's motion to remand, finding that there was insufficient evidence to show that the amount in controversy for the plaintiff's individual claims exceeded $75,000. The defendants again removed the case to federal court on October 26, 2011, based on discovery conducted prior to that date. The Tompkins plaintiff again moved to remand, and the Court again granted the plaintiff's motion on the grounds that the defendants had not met their burden of proving that the amount in controversy on the plaintiff's individual claims exceeded the jurisdictional threshold.

On June 15, 2012, after the Court remanded the case a second time, the Tompkins defendants deposed the named plaintiff in that case, David Tompkins. On September 21, 2012, the defendants offered Mr. Tompkins a Joint Offer to Compromise under California Civil Procedure Code § 998(b)(2), in the amount of $75,001.00. Mr. Tompkins accepted the Joint Offer on October 3, 2012.

The subject wage and hour claims were subsequently brought in a new class action, Bicek v. C&S Wholesale Grocers, Inc., No. 13-cv-00411, on behalf of the same putative class. Bicek, which is also before this Court, is a class action which this Court has jurisdiction over pursuant to the Class Action Fairness Act

///

///

---

[2] All facts relating to the Tompkins action are taken from Defendants' Opposition to Plaintiff's Motion to Remand. ECF No. 14.

## STANDARD

There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331 and (2) diversity jurisdiction under 28 U.S.C. § 1332. A district court has federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." Id. § 1331.  A district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, . . . and is between citizens of different states, or citizens of a State and citizens or subjects of a foreign state . . . ." Id. § 1332(a)(1)-(2).  Diversity jurisdiction requires complete diversity of citizenship, with each plaintiff being a citizen of a different state from each defendant.  28 U.S.C. § 1332(a)(1); Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68 (1996) (stating that complete diversity of citizenship is required).

When a party brings a case in state court in "which the district courts of the United States have original jurisdiction," the defendant may remove it to the federal court "embracing the place where such action is pending." 28 U.S.C. § 1441(a).  "The party invoking the removal statute bears the burden of establishing federal jurisdiction." Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988) (citing Williams v. Caterpillar Tractor Co., 786 F.2d 928, 940 (9th Cir. 1986)).  A motion to remand is the proper procedure for challenging removal.  "The party invoking the removal statute bears the burden of establishing federal jurisdiction." Ethridge, 861 F.2d at 1393 (internal citations omitted).  Courts "strictly construe the removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (internal citations omitted).  "[I]f there is any doubt as to the right of removal in the first instance," the court must grant the motion for remand. Id.  Additionally, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court.  28 U.S.C. § 1447(c).

///

///

**ANALYSIS**

Defendants removed the instant case pursuant to the Court's diversity jurisdiction. As set forth above, a district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, . . . and is between citizens of different states, or citizens of a State and citizens or subjects of a foreign state . . . ." Id. § 1332(a)(1)-(2).

### 1.    Citizenship

Diversity jurisdiction requires complete diversity of citizenship, with each plaintiff being a citizen of a different state from each defendant.  28 U.S.C. § 1332(a)(1); Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68 (1996) (stating that complete diversity of citizenship is required).  Here, it is clear that Plaintiff is a citizen of California.  The complaint alleges that "Plaintiff Jesus Alvarez is an individual residing in the State of California."  ECF No. 2-1 at 3.  The Notice of Removal also states that "Plaintiff alleges that he 'is an individual residing in the State of California' . . . .  Therefore, Plaintiff was domiciled in the State of California at the time he filed this action and is a citizen of California for the purposes of diversity jurisdiction in this matter.'"  ECF No. 1 at 7.

C&S is a corporation, and thus has dual citizenship for diversity purposes, meaning it is a citizen both of the state where it was incorporated and the state where it has its primary place of business.  See 28 USC 1332(c). Because C&S is incorporated in Vermont with its principal place of business in New Hampshire, it is a citizen of Vermont and New Hampshire for purposes of diversity jurisdiction.

Next is the issue of Tracy Logistics' citizenship.  For purposes of diversity jurisdiction in a case removed pursuant to 28 U.S.C. § 1441, "like a partnership, an LLC is a citizen of every state of which its owners/members are citizens."  Johnson v. Columbia Properties Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) (citations omitted).  Although unclear from Defendants' Opposition, Defendants' removal papers make clear that Tracy Logistics is diverse from Plaintiff.  ECF No. 1 at 7.  Tracy Logistics

is owned by its sole member, C&S Logistics of Sacramento/Tracy LLC, which in turn is wholly owned by its sole member, C&S Acquisitions LLC.  C&S Acquisitions LLC is wholly owned by its sole member, C&S Wholesale Grocers, Inc., which is a citizen of both Vermont and New Hampshire.  Tracy Logistics, like C&S Wholesale Grocers, Inc., is therefore also a citizen of Vermont and New Hampshire.

Thus, because Plaintiff is a citizen of California, while Defendants are citizens of Vermont and New Hampshire, there is complete diversity between Plaintiff and Defendants.

### 2. Amount in Controversy

#### a. Defendants' Burden

Defendants contend that the standard for establishing the amount in controversy is a preponderance of the evidence.  Plaintiff, on the other hand, takes the position that the Court lacks jurisdiction because he alleges that the amount in controversy for their individual claims is less than $75,000, and Defendants have failed to prove with legal certainty that the jurisdictional amount is met.  Specifically, the Complaint states in the Jurisdiction and Venue allegations that "the 'amount in controversy' for the named Plaintiff, including claims for compensatory damages, restitution, penalties, and pro rata share of attorneys' fees is less than [$75,000]."  Compl. at 2.  No specific amount is stated in Plaintiff's prayer for relief.  See Compl. at 18-22.  The prayer for relief lists civil and statutory penalties; reasonable attorneys' fees and costs of the suit; actual, consequential, and incidental losses and damages; and other and further relief as the Court deems just and proper.

For the reasons set forth in the related case Cagle v. C&S Wholesale Grocers, Inc., No. 2:13-cv-02134, in the Court's Order issued February 19, 2014, ECF No. 24, the Court finds that the standard for determining whether Defendants meet their burden of establishing the amount in controversy is the preponderance of the evidence.  Under this standard, "the removing party's burden is 'not daunting,' and defendants are not obligated to 'research, state, and prove the plaintiff's claims for damages.'"  Behrazfar v.

Unisys Corp., 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (quoting Korn v. Polo Ralph Lauren Corp., 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008)). When a "[d]efendant's calculations [are] relatively conservative, made in good faith, and based on evidence wherever possible," the court may find that the "[d]efendant has established by a preponderance of the evidence that the amount in controversy" is met. Id. (citing Neville v. Value City Dep't Stores, LLC., No. 07-cv-53-DRH, 2008 WL 2796661, *5-6 (S.D. Ill. July 18, 2008); Eisler v. Med. Shoppe Int'l, Inc., NO. 4:05CV2272 JCH, 2006 WL 415953, *2 (E.D. Mo. 2006)).

### b. Amount in Controversy Calculations

Plaintiff takes issue with Defendants' calculations of Plaintiff's overtime claim. Mot. at 5. Specifically, Plaintiff contends that Defendants may not rely on a declaration made by Plaintiff in April 2011 as evidence of Plaintiff's hours worked through August 2013. Plaintiff also takes issue with Defendants' proposition that Plaintiff's salary was $28.13 per hour. Plaintiff also argues that Defendants' reliance on the settlement in Tompkins is impermissible.

As a preliminary matter, the Court finds that under the preponderance of the evidence standard, it may accept $28.13 as Plaintiff's hourly wage. This assertion, contained in the Notice of Removal, is a weighted average which takes into consideration the amount of weeks worked at each hourly rate during the relevant class period. Notice of Removal at 10. Thus, this amount appears to be "relatively conservative, made in good faith, and based on evidence." Behrazfar, 687 F. Supp. 2d at 1004.

The time period at issue begins July 18, 2009. From July 18, 2009, to March 31, 2011, Plaintiff worked 88 workweeks. Plaintiff's Declaration states that during that time period, he worked Sunday through Thursday. Chan Decl. at 1. On days other than Thursday, Plaintiff worked from approximately 4:00 PM to 4:00 AM, or 12 hours per day. Id. On Thursdays, Plaintiff worked from approximately 2:30 PM to 1:00 AM, or 10.5 hours per day. Id. Accordingly, during this time period, Plaintiff worked approximately

7

18.5 hours of overtime per week.  From April 1, 2011, to April 20, 2011, Plaintiff's schedule was Monday through Friday from approximately 2:00 PM to 2:00 AM.  Id. Thus, from April 1, 2011, to April 20, 2011, Plaintiff worked 14 12-hour days.  The Court therefore calculates Plaintiff's overtime claim from July 18, 2009, to March 31, 2011, as follows: (88 weeks x 18.5 hours OT per week x $28.13 per hour x 1.5 = $68,693.46). The amount in controversy for this claim from April 1, 2011, to April 20, 2011, is calculated as follows: (14 days x 4 hours OT per day x $28.13 per hour x 1.5 = $2,362.92).  Thus, the total amount in controversy for this period is $71,056.38.

Given that Plaintiff does not contest Defendants' assertion that the amount in controversy for Plaintiff's wage statement claim is $4,000, and that the amount in controversy for Plaintiff's claim for failure to keep requisite payroll records is $500, the amount in controversy—without calculating attorneys' fees or the amount in controversy for the overtime claim past the date of April 20, 2011—is $75,556.38.

Accordingly, the Court finds that the requisite amount in controversy is met by a preponderance of the evidence.  Plaintiff's Motion to Remand is DENIED.

## CONCLUSION

For the reasons just stated, Plaintiff's Motion to Remand, ECF No. 16, is DENIED.

IT IS SO ORDERED.

Dated:  March 11, 2014

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT